The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. All right, thank you. You may be seated again. We are ready to hear argument in our next case, Northern Virginia Hemp and Agriculture v. the Commonwealth of Virginia. Mr. Markels. Markels, thank you, Your Honor, and may it please the Court. My name is James Markels and I, with co-counsel Thomas Cressman, we are here on behalf of the appellants in this case. The District Court erroneously denied our motion for preliminary injunction to enjoin the total THC standard as well as the sales restriction in SB 903. And the first, it was erroneous because it violated the principles of federal preemption because the Farm Act. What's your best argument that your appellants have standing? Well, the fact that the ban, well, they're different for each one. For the total THC standard, it's the fact that by it being enacted, it gutted essentially all the products that my clients sell or use. And so therefore, for Rose Lane, for example, she can no longer purchase, and it's in her declaration, the products that she had been using to treat her arthritis. But she's not selling or processing. It's just for personal use. So how does she have standing? Well, because she was using the products that were now banned as a result of the total THC standard. The total THC standard, it made it so that instead of the federal standard that said 0.3% of Delta 9 THC, which defined hemp under the federal law, Virginia law said 0.3% of all THC. So all the products that had any Delta 8, Delta 10. You can't get those products from another state? Well, no, because they're illegal here in Virginia. And so as soon as they come into Virginia, they are deemed marijuana under Virginia law. So she's holding marijuana when she has a bag of whatever the gummies that she had in her declaration, the Very Good Times gummies that she uses and takes before she goes to sleep because those help her sleep at night because she has chronic arthritis conditions. And so people use these Delta 8. I mean, part of this is that people use these products in a medicinal way, as Rose Lane does. But then my other clients, like Northern Virginia Hemp and Agriculture, they manufacture and sell the products. And now suddenly 90%, as we have in our declaration, we have specific numbers as to how their sales went down. And essentially we're forced out of business because 90% of what they were producing and what they were selling and what their customers wanted to buy was now illegal. And then for Franny's. That's a North Carolina company. Well, that's Franny's. Yes. And Franny's is affected twofold. First, they have their franchise here in Virginia. Again, 90% of their, or I think they said 85% of their products were now illegal. And so their revenues also dropped substantially, around 90%. And then they are affected by the sales restriction. Now, the sales restriction, and that's 4116 subsection C, that says that no Virginia processor or grower can sell industrial hemp using the federal standard, can sell industrial hemp to anyone who might use it to create a product that violates the total THC standard. Now, what that does is nobody outside of Virginia follows the total THC standard because Virginia is the only state that has it. And so therefore, wherever you are in the world, you can't buy Virginia industrial hemp because the implication would be if you're going to buy that hemp, you're going to make a product that doesn't follow the total THC standard because no one else follows it. And Franny's cannot buy it because Franny's is a North Carolina manufacturer and they don't have the total THC standard. She acknowledges in her declaration, I use industrial hemp to make, to manufacture products that do not follow the total THC standard. Not only did that affect her franchise because her franchise can no longer sell the Franny's products, but it also affects her ability to buy Virginia industrial hemp, which is an agricultural product. We cited to you the cases that, in our view, this is like wine. Wine is an agricultural product. It differs depending on where you grow it. Hemp can vary not only in the strains of hemp and the varieties of hemp that are out there, but it depends on if you're growing the same species of hemp in Virginia, it's going to grow differently than the ones in California. These are just inherently because agriculture is different and because the states have imposed different restrictions in how that hemp is to be produced, which is cultivation, not manufacture of products, but cultivation under the- And what about the district court's conclusion that Franny's at least was not injured yet because it didn't allege that it had to divert its shipping or anything? Well, this is where we're caught in a catch-22. One of the things I very strongly disagree with the district court about is that we filed suit two months after the SB903 went into effect. Which was pretty fast in terms of- It's two months after it went into effect, one month after Virginia started enforcing it, and your own cases have said that for these kinds of cases, you can wait and see how it actually is going to affect your business before you file suit. The implication of my friends on the other side appears to be, I need to file on day one, but if I file on day one, I'm going to run into the argument of, you haven't been affected yet. You can't say, I didn't file soon enough, and then say, you filed too late when you waited. A prospective concrete injury is enough. Right, and the criminalization is on one side. The fact that these products are marijuana under Virginia law means the obvious. They can be arrested for holding the stuff. And then you have the fines that they are subjected to by VDACs. And there is the evidence in the record that, yes, one month after these laws went into effect, people who are selling these products were getting fines. And it's all over the papers. And we represent other people who are being given these fines, $50,000, $100,000, and so on. So that's the standing. There's a lot of other issues here. Do you have other questions, Judgment? Yes. Okay, go ahead. So I'll begin with the federal preemption side. Congress in enacting... Whatever order of the various preemption arguments you make, but I'm interested in your implied preemption argument mostly. Okay. So I would just, I don't care if you do whatever order you want, but I'd like you to address, make sure you reserve time for that. I'll do my best, Your Honor. Okay. So the 2018 Farm Act very specifically defined hemp according to only its Delta 9 THC concentration. And then it created a regulatory regime for it. The states were invited to only be involved in one aspect of that regime, and that was the cultivation of hemp. Because each state might have different directives as to what kinds of pesticides or fertilizers or whatever could be used. And Virginia chose to engage in that and submitted a plan for that, and that is part of the record as well. And that is what the states were allowed to be involved in. Then the Farm Act goes on to say there's a rule of construction that no part of this statute can be interpreted to impede the interstate commerce in hemp as defined under the federal standard. And then it says no matter what, the states can't impede the flow of hemp through the states. Now, my friends on the other side say, well, those seem to overlap. But they don't because under the federal law, it does allow for a state to prohibit entirely the cultivation of hemp in its borders. And in that case, saying I don't want to be a part of this program, in that case, that's when the Transportation Clause comes into effect. The Transportation Clause says, all right, you don't have to allow hemp in your borders, but you have to let it go through your state. However, once you've submitted a plan, you've agreed to the federal standard. And the congressional report is clear. States were not intended to be allowed to redefine hemp however they wanted to redefine it in order to, if they didn't like hemp, they didn't like some aspect of what was happening, they could just redefine it. How can you say that when the statute specifically allows more stringent regulations for the production of hemp? The production of hemp, which is cultivation. And that's exactly what the Virginia plan covers. So every state in the country could cultivate, could impose those restrictions, and we'd have none of the hemp that your clients want. Well, what could happen is if every single state said we do not allow cultivation of hemp in our borders, yeah, there would be no industrial hemp to grow in America. But there would still be hemp from outside of America that could still, as long as it met with the federal standard, could still pass through the states. I'm sorry. I'm sorry. Because the FARM Act says no state shall prohibit the transportation of hemp or hemp products. Correct. Correct. Which my friends on the other side, they read that as the sole express preemption clause, but it's not. Because the rule of construction is very clear. It says you can't interpret any part of this statute to prohibit interstate commerce. So for them to interpret production like the CY wholesale case did, they interpret production as saying states can ban anything for sale, for consumption, for whatever. Judge Caldwell, I'm going to follow up. Yeah, I'm not following what you're saying. I understand the point that there may be that the statute talks about not impeding interstate commerce. But how does that equate to prohibiting sale, production within the state or sales within the state? Well, interstate commerce includes sales and consumption within the state. You go back to Wicker v. Filburn, that's where you get the interstate commerce clause. And as enforced further in Gonzales v. Raich, just growing it for your own use was held to affect interstate commerce because it affected all the things that led up to the ultimate consumption, the entire market for the good. In Wicker v. Filburn, it was wheat. So in this case, it's industrial hemp. Doesn't the statute also say that the statute is not intended to occupy, to fully occupy the field of criminal laws relating to? No, it doesn't say that. What my friends have argued is that the CSA doesn't say that, the Controlled Substances Act. And so therefore, because hemp as carved out from the CSA is separate, they say, well, now the enforcement of the CSA of marijuana minus hemp, that they're entitled to criminalize as they want along those same lines. But this is different because hemp has been specifically carved out, or was one of the examples that the Seventh Circuit used. This was actually carved out and given protection. It was the states were invited to play a very particular role in the new market for this good, for this agricultural good, and then were from there not invited to take further role because the remainder was the USDA was given regulatory control over the cultivation. The FDA was given control over all the products and how they were going to be sold. And so, and again, we do not dispute that the states can play a role under their police power to say, we need certain labeling restrictions. Treat it like alcohol. Treat it like medical marijuana, which apparently those are being sold just fine. No one's worried about that, even though medical marijuana is on its face far more intoxicating than the products that are being at issue today. But apparently with the regulations that are enforced there, no one's worried about children getting a hold of medical marijuana. Well, we're just asking that that's the solution, is treat it like that. Treat it like any other intoxicant. Virginia seems to take the position along with several other states. They submitted a letter to Congress in March that there's this loophole, that the Farm Act has created a loophole. And by only regulating it to Delta 9 THC, now all this Delta 8 can just flow through and is coming to the states. And how could Congress allow a brand-new intoxicant to be legal? And the fact of the matter is, that is exactly what the Farm Act allows. Congress is aware of it. The FDA could regulate D8 if it wanted to. Congress can change the law if it wants to. And neither case has that happened. And that's why the AGs reached out in March and said, hey, we would like you to redefine hemp in order to carve out, you know, make sure that D8 is taken off out of the equation. But Congress has not so acted. And the reason why Congress has not so acted is because Congress is looking at this from a more holistic, a more nationwide view. And they have chosen not to take action. In fact, as we are seeing, all the momentum is going in the other direction. Marijuana is now being, they're going to move that from being a Schedule 1 to a Schedule 3 drug. And there's nothing in writing yet, but it seems as though the actual definition of hemp, if anything, is going to get more lax because the growers are finding it hard to meet the point. With your time running down, have you addressed the Dormant Commerce Clause? I haven't. And so the Dormant Commerce Clause issue here is simply that the only people who can't buy Virginia industrial hemp is everyone outside of Virginia. Just by the way that it's set up. Because nobody outside of Virginia, as I said before, has to follow the total THC standard. My client, Franny's, can't buy Virginia industrial hemp. While anyone inside of Virginia, since they're subject to the total THC standard, they can. Now, there's just no other way to interpret what has happened here. And I think that's intentional. Virginia wants to extend its total THC standard outside of its borders. And the Dormant Commerce Clause simply doesn't allow that to happen. They have to treat everyone equally. And as a result... Well, it's their argument that they are. That there's nothing discriminatory here for in-state and out-of-state. Right. All that has to happen is that everyone outside of Virginia has to follow Virginia law. That's what the sales restriction says. And the Dormant Commerce Clause doesn't allow that. It says that they have to be able to allow people... And there's no interest for Virginia to do that. But doesn't Virginia apply and interpret the law to prohibit purchases within state too? Of course. If Virginia citizens can't purchase the hemp that you want to be legal, and out-of-state parties can't purchase the hemp that you want to be legal, how is that a Dormant Commerce Clause issue? Well, the issue is that everyone outside of Virginia can't have access to the Virginia industrial hemp market and purchase it. Now, the thing is, Virginia, as far as... There's Virginia industrial hemp being grown. And if it goes to North Carolina, it will be used by Frannies to make goods that meet with federal law. Now, Virginia is going to argue, well, I'm not going to allow you to sell those products here in Virginia. Well, that's a separate issue because, obviously, if you allow the total THC standard to stand, they have no danger. It can't come back in without it being illegal. And so, therefore, all they're affecting are North Carolina residents who could buy the products otherwise. I see that my time is up, but I'll just say that all it affects is North Carolina residents. It prevents Frannies from having more material to provide products to its own, to the people within its own borders, and that makes no sense under the Dormant Commerce Clause. Thank you. All right, thank you, Ms. Maley. Good morning, Your Honors, and may it please the Court. I'm Erica Maley, representing the Commonwealth of Virginia, and with me here at Council Table is Deputy Solicitor General Brendan Chestnut. Virginia acted well within the scope of its sovereign authority in prohibiting the sale of dangerous Delta-8 THC products that were causing a public health crisis, including the poisonings of children. As an initial matter, as Judge Benjamin indicated, plaintiffs do not have standing to raise several of the claims they're attempting to raise as the district court correctly held. And specifically, any claims... You said they don't have standing to raise several of the claims. Do they have standing to raise any of the claims? Yes, we have not contested standing for their claims on what they call the total THC standard, the prohibition on the sale of products in Virginia that have a greater concentration of Delta-8 THC, because at least some of the plaintiffs were engaged in that behavior. However, any claims that they're trying to raise under the express preemption provision regarding interstate transportation of hemp that's produced in accordance with the Federal Farm Act, they lack standing for that. Do they have to wait until they're injured or criminally sanctioned in order to have standing? No, that's not our position, Judge Sacker. They have to show either an actual injury or an imminent injury from the specific provisions they're attempting to challenge. Why is there not an imminent injury? Well, with regards to the interstate transportation of hemp for licensed products, it's because they haven't shown that they're engaged in that behavior. The express preemption provision specifically says a state cannot prohibit the interstate transportation of hemp products that are produced in accordance with the Federal Farm Act. And to be produced in accordance with the Federal Farm Act, certainly for a North Carolina company like Franny's, they have to have a license from the USDA to be producing those products. And they haven't alleged, they haven't presented any evidence that they do have a license from the USDA, and they don't appear on the USDA's list of licensed companies. So the activities that they're engaging in are not activities that would fall within the scope of that provision in the first instance. They also didn't produce any evidence that they have been impacted by it in terms of, for instance, their shipping costs going up. And the other provision where they have a standing issue is what they call the Sales Restriction Section 4116C of the Virginia statute. And that's because that provision directly regulates only licensed hemp producers in Virginia, and they're not licensed hemp producers in Virginia. And they haven't met the standards that this court set forth in Lane v. Holder for when a would-be consumer has standing to challenge a provision that directly regulates the seller. Because they haven't shown that they're unable to obtain desired products or that they're otherwise directly injured by those provisions. Their claims also, they haven't shown the required likelihood of success on the merits of either their preemption or Dormant Commerce Clause claims. The Farm Act defines hemp by its percentage of Delta-9 THC for purposes of federal law. But they point to nothing whatsoever in the Act that demonstrates a congressional intent to mandate that all states must use the same definition of hemp for purposes of their own state drug laws. And instead, the states retain their traditional authority to define the scope of their drug laws as they see fit to protect their citizens. And indeed... So what if every state defined hemp differently? Wouldn't that put us in a somewhat... create an unworkable... some, I guess, unworkable obstacles to the Farm Act? No, I don't think it would, Judge Benjamin. To the extent the states want to participate in the Cooperative State Federal Regulatory Program set up under the Farm Act, then in that program they would have to be complying with the federal law on the subject. And Virginia does. It has an exception for licensed Virginia producers that are not required to follow the total THC standard for products that they're growing or processing in Virginia. And the states, of course, under the Express Preemption Clause also can't prohibit those products under the Farm Act from passing through the state. But the Farm Act expressly says states can ban cultivation. And it says nothing about sale at all. And so it leaves the states free to prohibit the sale of the products or prohibit the cultivation of the hemp if they see fit. But the states that do wish to allow cultivation and sale of these products are free to do so. And the states can't stop those products from passing interstate through their borders. So, counsel, the plaintiffs claim that the rule of construction that nothing in the statute prohibits the interstate commerce of hemp does, in fact, preclude Virginia from restricting the sale of hemp that's not compliant with more stringently than federal law. What's your response to that? First of all, it clearly cannot expressly preempt Virginia law for the simple reason that it isn't an express preemption provision at all. My friend on the other side seems to wish to read that provision as if it said no state may prohibit the interstate commerce of hemp. But it simply doesn't say that. It says nothing in this title. And this title refers to the Federal Farm Act itself. So all that provision says is that nothing in the Farm Act should be read to prohibit the interstate commerce of hemp. But that doesn't, certainly not expressly, and also there's nothing that implies a congressional intent there to stop the states from prohibiting sale of these products within their own borders if they so choose. And I think it's important to keep in mind that the Farm Act itself does not regulate the sale of these products. The Farm Act regulates production of the hemp, and it has the provision about interstate transportation of hemp. And as to those which it does regulate, it expressly says the states may regulate more stringently if they choose, and the states may ban production entirely. And I don't see how my friend on the other side can imply from that that Congress, as to sale, which Congress chose not to regulate, it intended at the same time to prohibit the states from imposing any regulation. And the result of that would be to infer a congressional intent that the products must be entirely unregulated. And there's simply nothing in the Federal Act to support an inference like that. Again, when you're talking about products that are causing serious public health harms, including a dramatic spike in poisonings of young children, it would be extraordinary to conclude with nothing in the congressional text that Congress meant to say the states can't regulate in response to that. And the CSA itself says expressly that it's not intended to occupy the field, and indeed it's quite common for states to prohibit drugs that the CSA doesn't reach, or sometimes decline to prohibit drugs that the CSA does reach. And my friend on the other side says, well, that's different because it's the CSA. But the Farm Act amends the CSA. The THC standard, the definition of hemp that they're relying on, is an amendment to the definition of marijuana in the CSA. And so there's nothing to indicate that Congress, instead of simply decriminalizing these products as a matter of federal law, intended to go further and actually provide them some special protection against state law. And briefly, to the dormant commerce clause challenge again, we contend that the district court correctly held they don't have standing for that claim in the first instance. It also would fail on the merits, even if they did have standing, because the 4116C in no way treats Virginia businesses more favorably than out-of-state businesses. It's not a measure engaged in economic protectionism, and therefore it does not run afoul of the dormant commerce clause. Well, opposing counsel says everyone outside of Virginia has to follow Virginia law, and that's the issue with the dormant commerce clause here. What's your response to that? Two responses. One is we actually think they're reading the law somewhat over broadly, but I don't think the court needs to get into that issue, because even under their reading of it, it still wouldn't be a dormant commerce clause challenge. There's no dispute that the law applies to Virginia buyers of Virginia hemp, and so if it applies in the same way to non-Virginia buyers of Virginia hemp, then that's not a protectionist measure. And they seem to be going instead on a theory that it's impermissibly extraterritorial, but that would run contrary to the Supreme Court's recent holding in the National Pork Producers case that said the dormant commerce clause doesn't prohibit laws simply on the ground that they have extraterritorial effects. Those extraterritorial effects have to be protectionist in nature, have to be in some way trying to advantage the in-state businesses over the out-of-state businesses. And is your argument on standing on the dormant commerce clause the same as the argument you made earlier? Yes, that would be the Lane v. Holder issue. Because they're not themselves licensed hemp producers that are directly affected by this provision, they'd have to show that it makes them unable to get hemp, and they haven't shown that, that they're unable to obtain hemp products. They posit that hemp is somehow like wine, and so the inability to get Virginia hemp products in particular is an injury to them, but there's no evidence of that in the record at all. There's no evidence that there's some particular quality of Virginia hemp that would make their hemp products more valuable or give them a competitive advantage versus using hemp that's grown over the border in North Carolina. What about their irreparable harm argument that they would be subjected to criminal activity? I know that there is no criminal liability for personal use, but I'm curious as to your argument regarding the sale and the production. Certainly, Judge Benjamin. Again, as to Ms. Lane, all she alleges that she's engaged in is personal use of the product, and so she's not at any risk of criminal enforcement for that reason because everything she's alleged is in compliance with Virginia law. As to the other two plaintiffs, Franny's and Northern Virginia Hemp, they also have not alleged that they are currently in violation of the law. In fact, their theories of economic harm seem to rest on allegations that they're complying with the law,  so they need to violate and be subject to criminal prosecution in order to have a claim? No, not necessarily. I'm simply responding to whether they've shown that they're at risk of irreparable injury during the pendency of this litigation due to criminal enforcement specifically, and if they're not during the pendency of this litigation intending to violate the law, then they wouldn't be at any risk of criminal enforcement. But would that be irreparable harm? If they were at risk of imminent criminal enforcement, then I believe that would be irreparable harm. Because they would have to divert around Virginia in order to not be subject to criminal prosecution. Well, as to the interstate transportation in particular, only Franny's has alleged that they ship products interstate, and they said they're doing it through third-party shippers, and they didn't put in clear evidence one way or another as to whether their shippers are or are not diverting products around Virginia. But again, even if the court had any concerns about the irreparable harm prong of the inquiry, it's plaintiff's burden to make out all four prongs of the preliminary injunction standard, and they have not shown a likelihood of success on the merits of any of their claims. Also, the remaining two equitable factors, the balance of the equities and the public interest, weighs strongly in favor of Virginia, because Virginia has a strong interest in prohibiting the sale of these dangerous products that were leading to poisoning issues. Any sort of state action making conduct that it can permissibly make illegal would necessarily create irreparable harm for someone engaged in the now illegal activity. Now, I guess there's facts where that might not be the case if they're really not engaged in it, they're just thinking about it or whatever. So it seems to me, I think that's your last point, that the key question is whether Virginia is prohibited from doing this. If they're not prohibited under the Farm Act, then the fact that it may have a lot of harm is kind of beside the point. Yes, I completely agree, Judge Quattlebaum. If they haven't shown a likelihood of success on the merits, they're not entitled to a preliminary injunction without any need to even reach the question of whether any injuries could be irreparable. If the court has no further questions, we respectfully request that the judgment be affirmed. All right, thank you for your argument. We'll hear again from Mr. Markels. Briefly, Your Honor, thank you. Contrary to what my friend just said, Congress did say in its congressional report, in plain language, that it did not intend for the states to be able to redefine hemp. In the legislative history? That is correct, and I quoted to it in my reply brief. I'm not suggesting waiver, and we can look at legislative history, but the best way we normally discern congressional intent is to what they actually put into law. Correct, but that is why you also look at the rule of construction, which is what they did put into law. And, again, you can't use, for instance, the word production and say, and so they're trying to construe the Farm Act. They're trying to construe the Farm Act to say, well, there's voids in the Farm Act. There's nothing about selling. There's nothing about buying. Well, there is. The rule of construction talks about interstate commerce, and that includes selling and buying. And, in addition, the Farm Act specifically said, this act doesn't change anything about the FDA's authority to regulate these products. In addition to the USDA having the same regulatory authority over how it's cultivated and handled, and even the Department of Health and Human Services is acknowledged to have direct regulatory authority. My friend on the other side has not pointed to a single actual void that needed the states to step in. The states have interpreted instead that the void is a loophole, the loophole being Delta 8. They say Delta 8 is dangerous, as they've said. Well, but compared to what? Dangerous compared to bathtubs or what else? We're not making decisions based on our view or even Virginia's view of what they decide to be most dangerous. I mean, that's what elections are for. That's what Congress is for. Well, it's what Congress is for unless there's no role of the states. I mean, it's not by definition the federal government's sole responsibility to exercise police power over things like marijuana. Absolutely. So you've got an argument that's preempted that either is going to prevail or it's not. But if it's not preempted, states have every right to do that. I agree, Your Honor. If Your Honors find that there is no preemption of the Farm Act on the total THC standard, then obviously the states are entitled to go ahead and regulate in that area. But the problem is that they are preempted because Congress clearly intended to create an interstate market, a national market in this new product and protected it in interstate commerce and then only invited the states to take action with regard to cultivation. And as a result... Could you respond to opposing counsel's standing argument about the fact that I think Franny's is one that doesn't have licenses apparently at this point? Because they're misreading the statute with all due respect because that's dealing with 4313 subsection A, which talks about the handling of industrial hemp. We're not talking about the banned products here. We're talking about industrial hemp. They're talking about the growers. They wanted to make sure that when they banned all these products, that the people who are still just growing the hemp under the federal standard, which they were allowed to do under the Virginia plan, that they wouldn't then be able to just start arresting those people for growing the hemp that the federal government clearly allowed them to do. That argument is a red herring because we're not talking about industrial hemp. We're talking about hemp products. Exactly. And so there is no need for Franny's or my client Northern Virginia Hemp. They are licensed. I mean, they are covered under 4313. But we still get back to the real problem here. It's the banned products. And my clients were having to stop the sale of these products in order to avoid criminal and civil sanction. And that's the irreparable harm here. I see my time is up. Thank you for your time, Your Honor. All right. Thank you. We'll come down and greet counsel and proceed to our next case.
judges: Stephanie D. Thacker, A. Marvin Quattlebaum Jr., DeAndrea Gist Benjamin